PATENT (VOWELL v.). See Case No. 17,022.

## Case No. 10,795.

### The PATERSON.

[3 Ben. 299.] [1]

District Court, S. D. New York. June. 1869.

COLLISION—AT PIER BETWEEN STEAMBOATS—LOOKOUT—COSTS.

1. A steamboat, whose berth was on the north side of a pier, was unable to get into it, and came to the end of the pier, and, for the purpose of making a landing, was backed down across a ferry slip on the south side of the pier, without any one or her stern to look out, and was run into by a ferryboat, which was coming into the ferry slip: Held, that the steamboat was in fault, in thus backing without keeping at her stern a proper lookout, and without paying attention to the approach of the ferryboat.

2. The ferryboat was also in fault, in not stopping sooner, and in not approaching with greater caution, especially as her pilot saw that there was no one on the steamboat's deck noticing the ferryboat's approach.

3. The damages must be divided, and the libellant should have his costs.

[Cited in The Mary Patten, Case No. 9,223; Vanderbilt v. Reynolds, Id. 16,839; The Hercules, 20 Fed. 205.]

In admiralty.

C. M. Da Costa, for libellant.

W. J. A. Fuller, for claimants.

BLATCHFORD, District Judge. The libellant, owner of the steamboat Thomas E. Hulse, brings this suit against the steamboat Paterson, to recover for the damages done to the former vessel by a collision, which took place between them on the morning of the 15th of August, 1867, about eight o'clock. The bow of the Paterson came in contact with the stern of the Hulse, and broke her stern-post, and otherwise damaged

[1] [Reported by Robert D. Benedict. Esq., and here reprinted by permission.]

her. The Paterson was a ferryboat, plying on a regular ferry between Christopher street, New York, and Hoboken. The Hulse plied to Fort Lee. Her regular landing place was on the north side of the pier at the foot of Christopher street. The ferry slip of the Paterson was in the basin next south of that pier, the pier projecting into the river some distance beyond the mouth of the ferry slip proper, which latter was formed by racks. The Paterson was on a trip from Hoboken to New York, bound for the said slip. The Hulse had arrived from Fort Lee, with passengers, and, not being able, in consequence of the presence of other vessels, to effect a landing, either on the north side of the pier, or at the end of it, worked herself around the south corner of the end of the pier, with a line out thereto, for the purpose of trying to make a landing, with her bow in, at the south side of another steamboat, which lay at the south side of the pier. This manœuvre of hers was seen by the pilot of the Paterson at a distance of about 600 yards, and he immediately slowed his engine to half speed, and proceeded towards his slip. It is claimed, on the part of the Paterson, that her pilot saw the line referred to let go, and saw the Hulse move off in a southerly direction, inside of the slip, until her stem had reached a point to the eastward of the western end of the southerly ferry rack, and until he could see a clear path on the port side of the Hulse, for the Paterson to go into the ferry slip. Before that time, the Hulse, on the evidence, had been going first ahead and then backward in the slip, with the design, in fact, of effecting a landing at the south side of the steamboat which lay at the south side of the pier, and with no other design. In pursuance of that design, and while the Paterson was still running ahead at half speed, and when, as claimed on the part of the Paterson, the Hulse was in such a position that the pilot of the Paterson thought that the Hulse was intending to make a landing at a pier that lay south of the southerly ferry rack, the engine of the Hulse was started to move the boat backwards, her stern being towards the Paterson, and the pilot of the Paterson, seeing her coming backwards towards him, immediately stopped and reversed his engine, and it had made two or three revolutions back before the collision, so that the Paterson was going ahead very little, if she was not about dead in the water, at the time of the collision. When the engine of the Hulse was thus started to move her backwards, no attention was paid by her to the approaching Paterson, and no lookout was stationed aft, to see whether something might not be in her way, but she continued to back, until a passenger on board of her notified her engineer that the Paterson was right under the stern of the Hulse, whereupon he stopped the backward motion of the engine, after it

had been working back about five turns, and started it in the other direction, and it had turned ahead about three-quarters of a turn, and was turning ahead, at the time of the collision, but the backward motion of the Hulse in the water had not been stopped.

On the above facts, the Hulse was in fault, in backing without keeping a proper lookout at her stern, and without paying attention to the approach of the Paterson. But I think that the Paterson was also in fault, in not sooner stopping and reversing. Notwithstanding the appearance the Hulse may have presented to her pilot, the Paterson ought not to have kept on at half speed as long as she did. The manœuvres of the Hulse were such as to call for greater caution on the part of the Paterson than she exhibited, particularly as her pilot says that he could see no one on the the the deck of the Hulse noticing the approach of the Paterson.

When the damages are ascertained by a reference, they must be divided. The libellant will be entitled to costs.